UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA BAYOL,<br><br>    Plaintiff,<br><br>    v.<br><br>ZIPCAR, INC.,<br><br>    Defendant. | Case No. 14-cv-02483-TEH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

This matter came before the Court on January 26, 2015, on Zipcar's motion to dismiss the complaint. The Court has carefully considered the parties' arguments, and now DENIES Zipcar's motion, for the reasons set forth below.

**BACKGROUND**

Plaintiff Gabriela Bayol is a resident of Daly City, California and a member of Zipcar, a short-term car rental service. In order to use Zipcar, Bayol entered into a standardized Membership Agreement setting out the terms of her rentals. Under the Agreement, members must pay a fee of $50 per hour, up to $150, for returning a car late, in addition to the normal rental rate. Membership Agreement, Ex. A to Mot., at Schedule 2, § 1. Bayol alleges that she has returned a Zipcar late, and has accordingly paid the late fees set out in the Membership Agreement.

Bayol brought this putative class action to challenge Zipcar's late fees under various California consumer protection statutes, including Civil Code section 1671(d), the Consumer Legal Remedies Act ("CLRA"), and the Unfair Competition Law ("UCL"). Bayol argues that Zipcar's late fee provision is presumptively illegal under section 1671(d) because it sets liquidated damages in a consumer contract. She alleges that it would not be impracticable to calculate Zipcar's actual damages when a car is returned late, that Zipcar did not conduct a reasonable endeavor to estimate its actual damages, and that the late fees

1  imposed bear no reasonable relation to Zipcar's actual damages. She also alleges that such
2  fees are unconscionable and unfair, because they are included in a contract of adhesion and
3  are unreasonably favorable to Zipcar. Invoking these statutes, Bayol seeks a permanent
4  injunction against Zipcar's late fee policy, restitution and damages.

5  Zipcar brought this motion to dismiss the complaint in its entirety. Zipcar argues
6  that its late fees are not liquidated damages, because they vary based on how late a car is
7  returned. Zipcar also argues that Bayol's factual claims are so conclusory that they must
8  be rejected, even at the pleadings stage. Zipcar argues that no amendment could cure these
9  defects, so the complaint should be dismissed with prejudice.

**LEGAL STANDARD**

Rule 12(b)(6) requires dismissal when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Zipcar makes two primary arguments as to why the complaint should be dismissed. First, it argues that its late fees are not "liquidated damages" under California law, so Plaintiff does not have a statutory basis for her claims. Second, Zipcar argues that Plaintiff's factual allegations are insufficient under the plausibility standard that is required at the pleadings stage.

Both of these arguments fail. Zipcar's late fees are liquidated damages, because they can readily be determined from the contract at the time of breach. And Plaintiff's complaint, though somewhat conclusory, nonetheless makes sufficient factual allegations at the pleadings stage.

### I. Zipcar's Late Fees are Liquidated Damages

California law places significant restrictions on a party's ability to use a consumer contract to set what damages it will be entitled to in the event of a breach. California statute provides that, for a contract for the rental of personal goods or services for personal, family, or household purposes, "a provision in a contract liquidating damages for the breach of the contract is void except [when] it would be impracticable or extremely difficult to fix the actual damage." Cal. Civil Code § 1671(d). Although the validity of a liquidated damages provision is a fact-based inquiry not appropriately determined on a motion to dismiss, whether a provision *is* a liquidated damages provision is a question of law for the court to decide. *Ruwe v. Cellco P'ship*, 613 F. Supp. 2d 1191, 1196 (N.D. Cal. 2009); *see also Berkeley Unified Sch. Dist. of Alameda Cnty. v. James I Barnes Constr. Co.*, 112 F. Supp. 396, 400-01 (N.D. Cal. 1953).

"California courts have defined [liquidated damages] as 'an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement . . . .'" *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (quoting *Kelly v. McDonald*, 98 Cal. App. 121, 125 (1929)). To be sufficiently fixed and certain to qualify as "liquidated damages," a provision must either set the exact

3

amount (i.e., a single number), or provide some formula by which the amount is "certain or readily ascertainable." *See Chodos*, 292 F.3d at 1002.

In *Chodos*, the Ninth Circuit held that an author's entitlement to 15% of revenues from the sales of a book that was never published was not a "liquidated debt," because "the revenues to which that percentage figure is to be applied cannot be calculated with reasonable certainty." *Id.* Since the book was never published, there were no revenue figures on which to base the calculation, and the damages could not be ascertained. *Id.*

A court in this district, applying *Chodos*, has held that a cable company's termination fees were not liquidated damages, where customers "'may be subject [to] a termination fee of up to $700,' but that the 'exact amount ... is a function of when your account is terminated and the type of Service Plan you are on.'" *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1046 (N.D. Cal. 2010) (quoting the Subscriber Agreement). The plaintiffs in that case also alleged that the cable company routinely imposed a fee of $400, but the complaint actually included only one example, and it was for a fee of $300. *Id.* This uncertainty in the amount of the fee, from $300 to $400 to some other number up to $700, led the court to conclude that the plaintiffs "failed to allege that the Subscriber Agreement included a fixed fee that constituted impermissible liquidated damages under § 1671." *Id.*

However, courts will find fees that are not a single, fixed number to be liquidated damages provisions where they can easily be determined from the contract at the time of breach. For example, a court in the Southern District of California found that membership fees of $59 per month for prepaid massage services were liquidated damages, even though the amount of fees that each member paid varied based on how many months he or she had been a member, because the total amount was readily discernible at the time of breach, i.e., cancellation of the contract. *Hahn v. Massage Envy Franchising, LLC*, No. 12-cv-153 DMS, 2014 WL 5100220, at *12 (S.D. Cal. Sept. 25, 2014). The court held that "[w]hen a contract provides a formula to calculate liquidated damages based on profits, and damages can be calculated after breach when the profits had been earned, the provision is for

4

1 liquidated damages, even if the actual amount cannot be calculated at the time of contract
2 formation." *Id.* (citing *Higgins v. Desert Braemar, Inc.*, 219 Cal. App. 2d 744, 752 (1963)
3 ("The obligation to pay the amount agreed upon for the services rendered becomes a
4 liquidated debt . . . when that amount has been ascertained or is ascertainable by reference
5 to a formula prescribed by the agreement.")). As a result, "[t]he membership agreement
6 [was] sufficiently certain to support liquidated damages." *Hahn*, 2014 WL 5100220, at
7 *12.

8 In many cases, the parties do not dispute whether a damages provision based on a
9 formula falls within the liquidated damages statute. *See, e.g.*, *Ubaldi v. SLM Corp.*, 852 F.
10 Supp. 2d 1190, 1192, 1203 (N.D. Cal. 2012) ($5 fee or 5% of unpaid loan amount); *Gellis*
11 *v. Verizon Commc'ns, Inc.*, No. 07-cv-3679 JSW, 2007 WL 7044762, at *1 (N.D. Cal.
12 Nov. 5, 2007) ($5 fee or 1.5% of unpaid balance each month); *Ridgley v. Topa Thrift &*
13 *Loan Ass'n*, 17 Cal. 4th 970, 974 (1998) (prepayment charge of six month's interest at the
14 rate in effect at the time of prepayment); *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*, 9
15 Cal. 3d 731, 740 (1973) (2% of unpaid loan balance); *Hitz v. First Interstate Bank*, 38 Cal.
16 App. 4th 274, 279 (1995) (late fee of 5% of amount due, between $3 and $5). Although
17 these cases do not *hold* that formula-based fees are liquidated damages, because the parties
18 did not dispute the issue, they nonetheless show that such fees are routinely treated as
19 liquidated damages by parties and courts in such cases.

20 Of course, in some cases, the liquidated damages provision will be for an exact
21 amount, rather than a formula. In *Ruwe*, a court in this district held that a $15 cell phone
22 reconnection fee that Verizon charged to customers whose service was suspended was a
23 liquidated damages provision. 613 F. Supp. 2d at 1198. The contract in that case did not
24 specify an exact amount or formula, but Verizon imposed the same $15 fee to all such
25 customers. *Id.* The court found that this was sufficient to render the fee "fixed and
26 certain," despite the ambiguity in the contract itself. *Id.* The court did not hold that a fee
27 *must* always be in the same amount in order to be liquidated damages; rather, the court
28

held that fees always applied in the same amount *can* be liquidated damages, even where the contract itself does not specify the amount. *See id.*

Here, Zipcar's late fees are clearly liquidated damages. The provision imposes late fees of $50 for each hour (or portion of an hour) that a car is kept beyond the end of a reservation, up to a maximum of $150. Membership Agreement, Ex. A to Mot., at Schedule 2, § 1. These fees are "fixed and certain" by the Membership Agreement, as the amount is immediately determined at the time the car is returned.

Zipcar argues that its late fees are not liquidated damages because the amount is not the exact same in each case – it will vary from $50-$150 depending on how late a car is returned. However, as the cases above demonstrate, fees do not need to be applied in the exact same amount in order to be liquidated damages.

Zipcar also misconstrues *Chodos* as imposing a strong requirement that fees be the same in all cases. As discussed above, the issue in that case was that there were no revenues on which to base the author's 15% royalty calculation, not that the fee provision varied based on a formula. 292 F.3d at 1002. Zipcar ignores *Chodos*'s requirement that liquidated damages be "certain *or readily ascertainable*." *Id.* (emphasis added).

Zipcar makes the same mistake with the *Walter* case. There, the issue was that the cable contract allowed the company to charge a variable fee up to $700, without specifying exactly how the fee was calculated, and the plaintiffs inconsistently pled that fees were always in the amount of $400 and that one plaintiff had been charged $300. 682 F. Supp. 2d at 1046. It was the lack of certainty in the contract and the pleadings, not the mere fact that the amount could vary, that doomed the plaintiffs' claim in that case. *See id.*

Zipcar also misconstrues *Ruwe* as imposing this "same amount" requirement. As noted above, *Ruwe* actually held that it was *sufficient* for fees to be applied in the same amount to count as liquidated damages. 613 F. Supp. 2d at 1198. The court never said that it was *necessary* for the amount to be the same. *See id.*

Zipcar attempts to distinguish the *Hahn* case, where massage fees that accrued monthly were found to be liquidated damages, because the breach in that case was the

cancellation of the contract, at which time all fees had accrued and were known, whereas breach here allegedly occurs at the instant that the car is not returned on time, but the amount of the fee is not known until the car is ultimately returned. Zipcar provides no support for its argument that breach must be viewed as a single instant. Rather, it is reasonable to consider a late customer to be in breach until the car is returned. Given the very high degree of certainty provided in the Subscriber Agreement, the Court is not persuaded by the argument that the amount must be determinable at the very instant that the car first becomes late in order for the fee to be treated as liquidated damages.

Plaintiff Bayol has shown that Zipcar's Membership Agreement imposed liquidated damages for returning cars late, triggering the application of section 1671(d). Zipcar's first argument in its motion to dismiss therefore fails.

## II. Plaintiff's Factual Allegations are Sufficient

Zipcar also argues that Plaintiff's factual allegations are so bare-bones that the complaint must be dismissed. As noted above, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In deciding whether a claim is "plausible," courts must consider the elements and standard of proof for the type of claim at issue. *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012) (allegations of free speech violations were more plausible than the invidious discrimination claims at issue in *Iqbal* because specific intent was not required). In burden-shifting cases, courts consider the effect of the burden-shifting

provision in evaluating the plausibility of the claim. *See Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049-50 (9th Cir. 2012) (in an age discrimination case, complaint was sufficient where it pled a *prima facie* case, because facts as alleged gave rise to an inference of discrimination).

The elements and allegations for each of Plaintiff's claims are discussed in turn.

### A. Plaintiff plausibly alleges a claim under section 1671(d)

Under California Civil Code section 1671(d), liquidated damages provisions in consumer contracts are "presumed void," and the proponent of the clause has the burden of rebutting that presumption at trial. *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 322 (2011); *see also In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1087-88 (C.D. Cal. 2010) ("[T]he policy embedded in California Civil Code § 1671(d), including the policy of shifting the burden of proof to the proponent of the liquidated damages clause, is fundamental California policy."). A party seeking enforcement must satisfy this burden by showing that "(1) fixing the amount of actual damages [is] impracticable or extremely difficult, and (2) the amount selected . . . represent[s] a reasonable endeavor to estimate fair compensation for the loss sustained." *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th at 322.

A court in the Central District of California held that a complaint under section 1671(d) was sufficient where:

> Plaintiffs specifically allege: (1) a Cancellation Fee was charged to Plaintiffs when they, and other consumers like them, cancelled their service (SAC ¶¶ 11–36, 44); (2) it "is neither impractical nor extremely difficult for DirecTV to determine the actual amount of damages occasioned by" the cancellation (SAC ¶ 138); (3) the Cancellation Fee "bear[s] no reasonable relationship to the actual costs incurred by DirecTV when customers cancel their service" (SAC ¶ 139); and (4) "the Cancellation Fee is intended as a penalty to dissuade Class members from cancelling DirecTV's services" (SAC ¶ 139).

*In re DirecTV*, 738 F. Supp. 2d at 1090.

8

1    Plaintiff has pled a plausible section 1671(d) violation in this case. First, despite
2 Zipcar's argument to the contrary, Plaintiff has adequately alleged that this is the type of
3 consumer contract covered by section 1671(d). As indicated above, section 1671(d)
4 applies to contracts "for the retail purchase, or rental, by such party of personal property or
5 services, primarily for the party's personal, family, or household purposes." Cal. Civ.
6 Code § 1671(c)(1). Here, Plaintiff alleges that "The Membership Agreement is a contract
7 for the purchase of services primarily for personal, family or household use of Bayol and
8 the members of the class." Compl. at ¶ 37. It is entirely plausible that Zipcar members
9 would use their rentals for personal, family or household purposes; Plaintiff does not need
10 to allege facts more specific than these.

11    Next, Zipcar argues that Plaintiff needed to specifically allege the amount of the late
12 fees that she has paid. However, this level of specificity is not required. Plaintiff alleges
13 that "Bayol is a Zipcar member, . . . and has incurred and paid Late Fees imposed by
14 Zipcar . . . ." Compl. at ¶ 9. She also alleges, "Zipcar has in fact imposed such Late Fees
15 on, and collected them from, Bayol and other members of the proposed class." Compl. at
16 ¶ 23. The Court finds these allegations plausible.

17    Regarding the section 1671(d) claim itself, Plaintiff alleges that, "it is neither
18 impracticable nor extremely difficult to fix the actual damage" that Zipcar suffers when a
19 car is returned late. Compl. at ¶ 25. "Furthermore . . . the Late Fees are not a reasonable
20 measure of or approximation of such damages and do not provide fair average
21 compensation therefor." *Id.* "On information and belief, Zipcar did not conduct a
22 reasonable endeavor to fix fair average compensation for [its] losses, if any . . . ." *Id.*

23    Although these allegations are fairly conclusory, they are nonetheless sufficient for
24 this type of claim. As discussed in Section I, above, Plaintiff has shown that the late fees
25 were liquidated damages. The provision is therefore presumed void, unless Zipcar shows
26 that it was difficult to set the actual damages, and that the fees reflect a reasonable effort to
27 estimate fair compensation. Plaintiff alleges that neither element is satisfied.
28

9

Plaintiff's claims are plausible. A company could reasonably consider several factors in setting a late fee besides estimating their actual damage, such as the likelihood of deterring late returns, or the opportunity to generate income from customers' tardiness. Moreover, a company that is headquartered in Massachusetts and does business across the country (and internationally) might not have prioritized the requirements of California law when it set its late fee. For both of these reasons, it is plausible that Zipcar's late fees do not represent a reasonable endeavor to estimate the fair value of the loss that Zipcar actually suffers.

The terms of the late fee provision also suggest a plausible mismatch with the damage Zipcar actually suffers. The minimum late fee is $50; this fee applies even where the car is returned an instant late, and no other reservations or operations are affected. On the other hand, the maximum fee is $150, even for a person who keeps a car out for 24 hours or more. It is plausible to conclude that Zipcar's actual damage in the former case is zero, and actual damage in the latter case is greater than the damage it suffers from a car being returned three hours late, which also incurs a late fee of $150. It may be that Zipcar arrived at these fees as a way to average out its damage over all late returners, but this mismatch at least makes Plaintiff's allegations plausible.

Zipcar argues that Plaintiff must "specifically allege" the facts supporting her claim, pointing to the language of *In re DirecTV* in which the court stated that "Plaintiffs specifically allege" certain facts. Zipcar misrepresents this language, in two ways. First, Zipcar emphasizes the words "specifically allege" as if the court had applied a heightened pleading standard. Rather, when viewed in the context of the sentence immediately preceding, it is best read as a linguistic segue, not a legal requirement: "The facts pled in the SAC are sufficient to state a claim for unlawful liquidated damages. Plaintiffs specifically allege: (1) a Cancellation Fee was charged to Plaintiffs when they, and other consumers like them, cancelled their service (SAC ¶¶ 11–36, 44) . . . ." *In re DirecTV*, 738 F. Supp. 2d at 1090. The rest of the quoted portions of the SAC shown above, which were found sufficient in that case, closely track the allegations of Plaintiff Bayol in this case.

10

1   Second, Zipcar argues that the SAC in *In re DirecTV* must have been more specific
2   because the court in that case was summarizing 29 different paragraphs in the quote
3   discussed above. However, this is only true because the court cited paragraphs 11-36 and
4   44 of the SAC for the allegations that multiple plaintiffs were charged a cancellation fee –
5   an issue that Zipcar does not dispute here. The remainder of the quoted portions of the
6   SAC do not appear to be summaries of more specific allegations, yet these are the portions
7   that are most similar to Plaintiff's allegations in this case. Because this level of specificity
8   is sufficient, Zipcar's argument fails.
9   Plaintiff has alleged a plausible violation of section 1671(d). Zipcar's motion to
10  dismiss this claim therefore fails.

### B. Plaintiff plausibly alleges her remaining claims

Plaintiff also alleges three other claims that are, to some extent, derivative of her section 1671(d) claim. Plaintiff alleges that, because the late fees are illegal liquidated damages under section 1671(d), she is entitled to relief under California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). She also separately alleges that the fees are "unfair" under the UCL.

The CLRA provides relief where a person in a transaction represents that the transaction involves remedies that the person does not have or which are prohibited by law, or "[i]nsert[s] an unconscionable provision in the contract." Cal. Civil Code § 1770(a)(14) ("prohibited remedies violation"); *id.* at § 1770(a)(19) ("unconscionable violation"). A violation of section 1671(d) can serve as a predicate offense for liability under the prohibited remedies prong of the CLRA, because such liquidated damages are remedies prohibited by law. *See, e.g.*, *In re Cellphone Termination Fee Cases*, 193 Cal. App. 4th at 308.

Under the alternate, "unconscionable" prong of the CLRA, unconscionability has both procedural and substantive elements. *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1318 (2005). A contract is procedurally unconscionable if it is a contract

11

of adhesion for which there are no reasonable market alternatives, if there is a significant imbalance in the bargaining strength of the parties, or if the terms were hidden, such that a party was surprised by them. *Id.* at 1319-20. "A provision is substantively unconscionable if it involves contract terms that are so one-sided as to shock the conscience, or that impose harsh or oppressive terms." *Id.* at 1322 (quotation omitted).

The UCL prohibits "unfair competition," which it defines to include "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. Prof. Code § 17200. "The UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quotation omitted).

"Under the UCL, an act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007) (quotation omitted).

Here, it is clear that Plaintiff plausibly alleges "prohibited remedies" CLRA and "unlawful" UCL violations. Plaintiff sufficiently alleges a 1671(d) violation, as discussed above, which can serve as a predicate violation for her "prohibited remedies" CLRA and "unlawful" UCL claims, precluding their dismissal.

Because Plaintiff plausibly alleges a "prohibited remedies" violation of the CLRA, the Court will not now consider whether she also alleges an "unconscionable" CLRA violation.

Plaintiff also plausibly alleges an "unfair" UCL violation. Plaintiff alleges:

> [T]he utility of the Late Fees is significantly outweighed by the gravity of the harm that they impose on consumers. The Late Fees have limited or no utility as compared with alternatives that would more fairly measure the harm (if any) incurred by Zipcar when a member makes a late return. The gravity of the harm that the Late Fees impose on consumers is substantial in that they exceed the actual amount of harm (if any) incurred by Zipcar when a member makes a late [return]. Through their imposition and collection of the Late Fees from the members of the Class, Zipcar has been massively and unjustly enriched.

12

*Id.* at ¶ 62. Plaintiff also alleges that "consumers could not have reasonably avoided the harm." *Id.* at ¶ 63. While these allegations are somewhat conclusory, they are sufficient to make Plaintiff's claims plausible. Because Zipcar imposes fees on customers who return cars late even when there are no follow-on reservations affected, it is plausible that consumers are substantially injured by these fees, that such injury outweighs the benefits of the fees, and that such fees cannot be easily avoided (e.g., because customers may unexpectedly be stuck in traffic). Such questions are better resolved after additional factual development. These allegations are sufficiently plausible at the pleadings stage.

Because Plaintiff has adequately alleged a 1671(d) violation, her follow-on CLRA and UCL claims are adequately alleged, as well. Also, her "unfair" UCL claim is plausible enough to survive a motion to dismiss.

**CONCLUSION**

Plaintiff has shown that Zipcar's late fees are liquidated damages under California law. It will be Zipcar's burden, going forward, to demonstrate the validity of these fees. Plaintiff has plausibly alleged that Zipcar cannot do so, because of the mismatch between the late fees and the actual harm that Zipcar likely suffers from late returns. Based on this claim, Plaintiff has also plausibly alleged that the late fees are unlawful under the CLRA and UCL. Finally, Plaintiff has plausibly alleged that the late fees are also unfair under the UCL. Although some of Plaintiff's allegations are somewhat conclusory, her claims are plausible enough to proceed to discovery. The motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: 01/29/15 _____
THELTON E. HENDERSON
United States District Judge

13