UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GABRIELA BAYOL,

               Plaintiff,

     v.

ZIPCAR, INC.,

               Defendant.

Case No. 14-cv-02483-TEH

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND DENYING DEFENDANT'S MOTION TO DISMISS**

This matter came before the Court on August 10, 2015, for a hearing on Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction (Docket No. 54) and Plaintiff's motion for leave to amend the Complaint (Docket No. 57). After carefully considering the arguments of the parties at the hearing and in the papers submitted, the Court hereby GRANTS Plaintiff's motion and DENIES Defendant's motion, for the reasons set forth below.

**BACKGROUND**

Plaintiff Gabriela Bayol ("Bayol") is a resident of Daly City and a member of Zipcar, a short-term car rental service. Compl. ¶ 9 (Docket No. 1). In order to use Zipcar, Bayol entered into a standardized Membership Agreement setting out the terms of her rentals. *Id.* Under the Agreement, members must pay a fee of $50 per hour, up to $150, for returning a car late, in addition to the normal rental rate. *Id.* ¶ 22. Bayol alleges that she has returned a Zipcar late, and has accordingly paid the late fees set out in the Membership Agreement. *Id.* ¶ 9.

Between May 30, 2010 and May 29, 2014, Zipcar collected $2,852,495 in late fees from non-corporate California Zipcar members. Sophastienphong Decl. ¶¶ 3-4 (Docket No. 54-2).

United States District Court
Northern District of California

1    Bayol sent a letter to Zipcar on May 19, 2014, demanding that it cease the allegedly

2    illegal collection of late fees from California Zipcar customers.  Ex. A to Fisher Decl. at 1

3    (Docket No. 57-1).  Ten days later, she filed this putative class action to challenge Zipcar's

4    late fees under various California consumer protection statutes, including Civil Code

5    section 1671(d), the Consumer Legal Remedies Act ("CLRA"), and the Unfair

6    Competition Law ("UCL").  Compl. ¶¶ 34-66.  Bayol argues that Zipcar's late fee

7    provision is presumptively illegal under section 1671(d) because it sets liquidated damages

8    in a consumer contract.  She alleges that it would not be impracticable to calculate Zipcar's

9    actual damages when a car is returned late, that Zipcar did not conduct a reasonable

10   endeavor to estimate its actual damages, and that the late fees imposed bear no reasonable

11   relation to Zipcar's actual damages.  She also alleges that such fees are unconscionable and

12   unfair, because they are included in a contract of adhesion and are unreasonably favorable

13   to Zipcar.  Invoking these statutes, Bayol seeks a permanent injunction against Zipcar's

14   late fee policy, restitution and damages.  Compl. at 14.

15   Zipcar now moves to dismiss the Complaint for lack of subject matter jurisdiction.

16   Def.'s Mot. at 1.  In partial response, Bayol filed a motion for leave to amend the

17   Complaint on June 16 of this year.  Plaintiff's Mot. at 1.  The only change in the proposed

18   First Amended Complaint is that Bayol alleges that Zipcar did not comply with her

19   demand letter within 30 days, and she is therefore seeking compensatory and punitive

20   damages as allowed by statute.  *Compare* Compl. ¶ 46 ("If Zipcar fails to take corrective

21   action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to

22   include a request for damages . . . ."), *with* Proposed FAC ¶ 46 (Docket No. 57-1) ("[A]

23   CLRA notice letter was served on Defendant . . . . Wherefore, Plaintiff seeks damages,

24   including punitive damages . . . .").

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

# LEGAL STANDARD

## I.    Leave to Amend

After the time has passed for a party to amend a pleading as a matter of course, the party may only amend further after obtaining leave of the court, or by consent of the adverse party. Fed. R. Civ. P. 15(a).  "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[T]his policy is to be applied with extreme liberality."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quotation omitted).  "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'"  *Sonoma Cnty. Ass'n of Ret. Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Of these so-called *Foman* factors, prejudice is the weightiest and most important.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Id*.  Evaluation of the *Foman* factors "should be performed with all inferences in favor of granting the motion."  *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

## II.   Subject Matter Jurisdiction

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A party may raise this defense by filing a motion under Rule 12(b)(1).  A federal court has original jurisdiction over an action under the Class Action Fairness Act where the amount in controversy exceeds $5 million and other requirements are met.  28 U.S.C. § 1332(d)(2).  "The sum claimed by the plaintiff controls so long as the claim is made in good faith."  *Crum v. Circus Circus Enter.*, 231 F.3d 1129, 1131 (9th Cir. 2000).  "To justify dismissal, it must appear to a

legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (internal quotation and citation omitted).

**DISCUSSION**

As explained below, the Court finds that Bayol should be granted leave to amend the Complaint, and that, after such leave is granted, Zipcar's motion to dismiss should be denied.

### I.   Bayol's Motion for Leave to Amend is Granted

The Complaint in this case alleges violations of the CLRA and the UCL.  Compl. ¶¶ 40-66.  The UCL only allows for injunctive relief and restitution.  *See* Cal. Bus. & Prof. Code § 17203.  The CLRA, on the other hand, allows for actual damages, injunctive relief, restitution, punitive damages, and any other relief the court deems proper.  Cal. Civ. Code § 1780(a)(1)-(5).  However, in order to obtain damages, a consumer must first demand that the defendant correct the allegedly illegal practice.  *Id.* § 1782(a), (b).  If a consumer has already initiated a lawsuit for injunctive relief before sending such a demand, the consumer may amend the complaint to add a request for damages if the defendant does not correct the practice within thirty days of the demand.  *Id.* § 1782(d).

Courts must freely give leave to amend when justice so requires.  Fed. R. Civ. P. 15(a)(2).  It is an abuse of discretion to deny leave to amend unless the party opposing amendment has shown that the *Foman* factors apply.  *Eminence Capital*, 316 F.3d at 1052. The three *Foman* factors at issue in this case are prejudice, futility, and undue delay. Def.'s Opp'n at 4 (Docket No. 64).  As discussed below, Zipcar has not shown that any of these factors prevent Bayol from amending the Complaint.

///

///

///

///

4

United States District Court
Northern District of California

### a.  Zipcar will not be prejudiced by amendment

Zipcar argues that it will be prejudiced by allowing Bayol to amend the Complaint. Prejudice is the "touchstone" of the Rule 15(a) inquiry.  *Eminence Capital*, 316 F.3d at 1052.

Prejudice can be shown where a party alleges new theories late in a case, significantly increases discovery burdens, forces a defendant to re-litigate claims that have already been decided in a prior stage, or delays a party's ability to collect a judgment. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953-54 (9th Cir. 2006); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).  For example, in *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986), a case in which summary judgment was entered against union members who challenged their union's leadership, the Ninth Circuit affirmed the district court's denial of leave to amend, where "Plaintiffs' attorney admitted that plaintiffs' delay in bringing the [new] cause of action was a tactical choice because he felt that the causes of action already stated were sufficient," and "the district court found that plaintiffs' motion to amend was brought to avoid the possibility of an adverse summary judgment ruling, and that allowing amendment would prejudice the Union because of the necessity for further discovery." *Id.* at 1398-99.

However, the mere fact that some litigation costs were incurred prior to amendment does not show prejudice, where amendment itself does not raise any of the concerns addressed above.  *Owens*, 244 F.3d at 712.

Punitive damages may be awarded where a defendant has "been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c).

Here, Zipcar argues that it would be prejudiced by amendment in two ways.  First, Zipcar argues that the proposed amendment does not provide it with adequate notice of

United States District Court
Northern District of California

1  conduct that would support a punitive damages award.  Def.'s Opp'n at 4.  Second, Zipcar

2  argues that amendment is improper because it was designed to avoid an adverse ruling on

3  the motion to dismiss.  *Id.*  Neither argument succeeds.

4       The proposed amendment provides adequate notice to Zipcar of conduct that could

5  give rise to punitive damages.  Indeed, the *original* Complaint provides adequate notice;

6  the only change here is that Bayol now alleges that she has demanded that Zipcar correct

7  its violations as required by statute.  *See* Cal. Bus. & Prof. Code § 1782.  Bayol sent her

8  demand letter ten days before filing the initial Complaint, but this was less than the thirty

9  day period required by the CLRA.  *See id.*  The proposed amendment merely reflects the

10  fact that she is now seeking damages because Zipcar did not stop its allegedly illegal

11  practice.  *Compare* Compl. ¶ 46 ("If Zipcar fails to take corrective action within 30 days of

12  receipt of the demand letter, Plaintiff will amend her complaint to include a request for

13  damages . . . ."), *with* Proposed FAC ¶ 46 ("[A] CLRA notice letter was served on

14  Defendant . . . . Wherefore, Plaintiff seeks damages, including punitive damages . . . .").

15       Both in the original Complaint and in the proposed amendment, Bayol alleges that

16  Zipcar charged late fees "intentionally, knowingly, and unlawfully . . . ."  Compl. ¶ 43;

17  Proposed FAC ¶ 43.  At this stage in the litigation, these allegations are sufficient to

18  support a potential punitive damages award.  Given that, but for the thirty-day limitation of

19  the statute, Bayol would have alleged a sufficient claim for punitive damages in the

20  *original* Complaint, the Court does not agree that Bayol is simply adding the magic words

21  "punitive damages" in order to manufacture jurisdiction.  Zipcar therefore had sufficient

22  notice of the facts giving rise to a potential punitive damages award, and it would not be

23  prejudiced by amendment for that reason.

24       Nor will Zipcar be unduly prejudiced from Bayol escaping an adverse decision on

25  its motion to dismiss.  True, amendment (and denial of Zipcar's motion to dismiss) will

26  allow the litigation to continue, but that alone is not sufficient prejudice.  This is not a case

27  where Zipcar is trying to enforce a judgment it has won against a plaintiff alleging a new

28  theory late in the game, such as in *Acri* or *Jackson*.  Rather, Zipcar is trying to dismiss

6

Bayol's lawsuit prior to a determination of its merits, and even though it had notice that she intended to seek punitive damages.

The Court recognizes that Bayol has not always been consistent on the question of whether she intended to seek amendment. *Compare* Compl. ¶ 46 ("If Zipcar fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages . . . .") *with* Joint Case Management Statement at 3 (Docket No. 45) ("Plaintiff does not anticipate filing an amended complaint at this time."). In spite of these inconsistent statements, the Court finds that, based on the allegations in the initial Complaint, Zipcar had fair notice of Bayol's damages theory, and it would not be prejudiced by granting her leave to amend at this time.

**b. Amendment is not futile**

The second *Foman* factor at issue is futility. Futility of amendment can, by itself, justify denying leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003). However, the party opposing amendment must make a "strong showing" of futility to deny amendment on this ground alone. *See Eminence Capital*, 316 F.3d at 1052.

Amendment here would not be futile for the same reason that Zipcar has failed to show prejudice: the proposed amendment *only* changes the allegations regarding whether a demand letter was sent, and, after that change, the proposed FAC alleges a plausible claim for both compensatory and punitive damages, based on Zipcar's malice. As discussed above, malice is adequately alleged in both the original and proposed amended complaints because Zipcar is alleged to have "intentionally, knowingly, and unlawfully" charged its customers illegal late fees.

**c. Plaintiff's delay in seeking leave to amend is not fatal**

The final *Foman* factor at issue is whether there was undue delay in Bayol seeking leave to amend. "'[U]ndue delay by itself is insufficient to justify denying a motion to

1  amend.'" *Owens*, 244 F.3d at 712-13 (quoting *Bowles v. Reade*, 198 F.3d 752, 758 (9th

2  Cir. 1999)).

3       The Ninth Circuit has held that a delay of fifteen – or even just eight – months

4  between when a party becomes aware of a fact and when it seeks leave to amend can

5  constitute undue delay. *AmerisourceBergen*, 465 F.3d at 952; *see also Texaco, Inc. v.*

6  *Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991).  However, in neither of these cases was undue

7  delay the sole justification for denying leave to amend; rather, in those cases, amendment

8  would have prejudiced the non-moving party. *AmerisourceBergen*, 465 F.3d at 953;

9  *Texaco*, 939 F.2d at 799.

10       Here, Bayol sent her demand letter to Zipcar on May 19, 2014.  She filed her initial

11  Complaint ten days later, on May 29, 2014.  Under California Business and Professions

12  Code section 1782(d), Bayol could have filed for leave to amend any time after June 28,

13  2014 – thirty days after she filed the initial Complaint.

14       Instead, Bayol filed this motion for leave to amend on June 16, 2015 – almost one

15  year after she was able to do so.  Not coincidentally, her motion to amend was filed

16  simultaneously with her opposition to Zipcar's motion to dismiss for lack of subject matter

17  jurisdiction.

18       At the hearing, Bayol's counsel indicated that she fully intended to amend her

19  Complaint once she was able to do so, and it was merely an oversight that she did not do

20  so earlier.

21       Although a delay of twelve months would be sufficient to deny leave to amend if

22  Zipcar would be prejudiced or if amendment would clearly be futile, neither of these other

23  *Foman* factors are present here.  Undue delay by itself is not sufficient to deny leave to

24  amend, and so the Court will not deny Bayol leave to amend on this ground.

25       Bayol's motion for leave to amend the Complaint is accordingly GRANTED.

26  ///

27  ///

28  ///

United States District Court
Northern District of California

**II.     Zipcar's Motion to Dismiss is Denied**

Considering Bayol's proposed amended Complaint, it is readily apparent that she has alleged a sufficient amount in controversy to defeat Zipcar's motion to dismiss. Federal courts have original jurisdiction under CAFA for class actions alleging more than $5 million in controversy.  28 U.S.C. § 1332(d)(2).  Under the amended Complaint, Bayol has met her burden of showing that there is a "legal possibility" that more than $5 million is in controversy.

**a.  Bayol must show a legal possibility that the class can recover $5 million**

The parties here dispute both the standard of proof for a motion to dismiss for lack of subject matter jurisdiction, and who carries the burden.  Citing removal cases, Zipcar argues that Bayol, as the party invoking federal jurisdiction, must prove by a preponderance of the evidence that the jurisdictional elements are met.  Def.'s Mot. at 5 (citing *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006)).

Bayol argues that the so-called "legal certainty" standard applies, and that Zipcar has the burden of showing to a legal certainty that $5 million is not in controversy. Plaintiff's Opp'n at 4 (Docket No. 56).

It is clear that the "legal certainty" or "legal possibility" test applies here, rather than the preponderance of the evidence test.  The Ninth Circuit has explained that the standard for evaluating jurisdiction in removal cases is stricter than that for cases originally filed in federal court.  In *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102 (9th Cir. 2010), a non-CAFA diversity case, the court held that the legal certainty standard applied to a petition to compel arbitration originally filed in federal court.  *Id.* at 1107.  The court explained that the standard for removal cases is stricter because such cases oust state courts of their jurisdiction; such concerns are not present when a case is originally filed in federal court.  *Id.* at 1106-07.  Applying the legal certainty standard, the court found that the "good faith allegations" in the plaintiff's state court complaint placed a sufficient

1   amount in controversy, even though the complaint did not allege a specific amount,

2   "because it is not legally certain the amount in controversy is $75,000 or less." *Id.* at

3   1107-08.

4           Turning to the question of who carries the burden, "[a]s the proponent of federal

5   court jurisdiction, it is well-established that the plaintiff bears the burden of showing that

6   there is no legal certainty that he or she cannot recover the applicable jurisdictional

7   amount." 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure

8   § 3702 (4th ed. 2015).  "It is plaintiff's burden both to allege with sufficient particularity

9   the facts creating jurisdiction, in view of the nature of the right asserted, and, if

10  appropriately challenged . . . to support the allegation." *St. Paul Mercury Indem. Co. v.

11  Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938).

12          At the same time, where a complaint, in good faith, alleges on its face a sufficient

13  amount in controversy, that amount controls unless there is a legal certainty that the stated

14  amount cannot be recovered. *Id.* at 288-89.  Applying this principle, courts in the Ninth

15  Circuit have stated that the amount in controversy requirement is "presumptively satisfied"

16  by a complaint that alleges a sufficient amount on its face, subject to the legal certainty

17  test. *E.g.*, *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing

18  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)); *Lowdermilk v.

19  U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007) (same), overruled on other

20  grounds by *Standard Fire Ins. Co. v. Knowles*, --- U.S. ---, 133 S. Ct. 1345 (2013).

21          Not surprisingly, given statements that the amount in a complaint is

22  "presumptively" valid, courts occasionally require the party *challenging* jurisdiction to

23  show that there is a legal certainty that a sufficient amount is *not* in controversy.  *E.g.*,

24  *Richardson v. Servicemaster Global Holdings, Inc.*, No. 09-CV-4044 SI, 2009 WL

25  4981149, at *3 (N.D. Cal. Dec. 15, 2009) ("In other words, when a plaintiff brings suit in

26  federal court alleging that the amount in controversy exceeds the jurisdictional minimum, a

27  defendant challenging the federal court's jurisdiction must establish to a legal certainty that

28  plaintiff's claim does not satisfy the requisite jurisdictional amount.").  In *Wilson v.

United States District Court
Northern District of California

1    *Stratosphere Corp.*, 371 Fed. App'x 810 (9th Cir. 2010), an unpublished memorandum

2    disposition, the Ninth Circuit treated the plaintiff's allegation that more than $5 million

3    was in controversy as presumptively true, and held that "[the defendant] has failed to show

4    to a legal certainty that the damages could not reach five million dollars." *Id.* at 811. And

5    in *Robichaud v. Speedy PC Software*, No. 12-CV-4730 LB, 2013 WL 818503 (N.D. Cal.

6    Mar. 5, 2013), the court noted that the plaintiff had facially alleged more than $5 million in

7    controversy, and so "[the defendant] must establish to a legal certainty that the amount in

8    controversy is less than that amount." *Id.* at *7. Judge Beeler found that "[the defendant

9    did] not meet its burden," because it only made hypothetical conjectures about the amount

10   in controversy which were not "link[ed] . . . to any evidence." *Id.*

11           However, these cases are in tension with the Supreme Court's statement in *St. Paul

12   Mercy*, albeit in a footnote, that the plaintiff has the burden of supporting a claim for

13   federal jurisdiction when challenged. The better interpretation of *St. Paul Mercy* is to

14   credit a plaintiff's good faith allegation absent a factual challenge, but to require the

15   plaintiff to justify it when challenged by a defendant's evidence. *See Kingman Reef Atoll*

16   *Investments, L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008); *Trentacosta v.*

17   *Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987); *see also Safe*

18   *Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

19           Accordingly, Bayol has the burden of showing a legal possibility that she and her

20   proposed class might recover more than $5 million dollars.

21

22   **b. There is a legal possibility that the class will recover more than $5 million**

23           Considering the proposed FAC, Bayol has put more than $5 million in controversy.

24   As discussed below, assuming even the most conservative estimate of compensatory

25   damages, a 1:1 ratio of punitive damages, and a 25% attorneys' fee, Bayol will have easily

26   surpassed CAFA's $5 million threshold.

27           "[T]he jurisdiction of the court depends upon the state of things at the time of the

28   action brought." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004).

United States District Court
Northern District of California

1    Accordingly, the amount in controversy requirement must be satisfied at the time the

2    complaint is filed.  *See Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 757 (9th Cir.

3    1999).

4        Under CAFA, "the claims of the individual class members shall be aggregated to

5    determine whether the matter in controversy exceeds the sum or value of $5,000,000,

6    exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  This provision abrogated prior

7    court decisions, including those of the Ninth Circuit, that only included an individual

8    plaintiff's claims in most circumstances.  *Yeroushalmi v. Blockbuster, Inc.*, No. 05-cv-225

9    AHM, 2005 WL 2083008, at *3 n.4 (C.D. Cal. July 11, 2005); *see also* 14AA Charles

10   Alan Wright & Arthur R. Miller, Federal Practice & Procedure §§ 3704.2, 3705.1 (4th ed.

11   2015).

12       As noted above, Bayol must show that there is not a legal certainty that the class

13   will not recover more than $5 million.  A court will find a legal certainty that a plaintiff

14   cannot recover a sufficient amount where the law clearly precludes a plaintiff's claims.

15   *See Kelly v. Fleetwood Enter., Inc.*, 377 F.3d 1034, 1039 (9th Cir. 2004).  For example, in

16   *Kelly*, the plaintiffs sought $250,000 in compensatory and $10 million in punitive damages

17   for a Magnuson-Moss Warranty Act claim regarding a leaky motor home.  *Id.* at 1036.  In

18   spite of the plaintiffs' allegations, the court found that there was an insufficient amount in

19   controversy, because the statute did not provide for compensatory damages for personal

20   injuries and neither the statute nor case law allowed for punitive damages.  *Id.* at 1038-39.

21       However, a plaintiff has a legal possibility of recovery where an affirmative defense

22   that would limit recovery might not actually apply.  *Geographic Expeditions*, 599 F.3d at

23   1108.  "This rule makes sense; just because a defendant might have a valid defense that

24   will reduce recovery to below the jurisdictional amount does not mean the defendant will

25   ultimately prevail on that defense."  *Id.*  Under this rule, even if a potential defense, such

26   as the statute of limitations, would apply to cut off a portion of the plaintiffs' recovery, the

27   court will not apply that defense unless it is shown to a legal certainty that it applies.  *See*

28   *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, at *10 (C.D. Cal. June 22, 2012).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

Here, Bayol pled that "the claims of the proposed Class members exceed the sum or

2

value of five million dollars ($5,000,000) in aggregate."  Compl. ¶ 12.  However, Zipcar

3

has challenged this claim with evidence; as discussed in the previous section, Bayol must

4

therefore show that there is a legal possibility that she and the class will recover a

5

sufficient amount.  The amount in controversy can include compensatory damages,

6

punitive damages, attorneys' fees, and the value of injunctive relief.  *See, e.g.*,

7

*Guglielmino*, 506 F.3d at 700; *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir.

8

2001).  The values of each of these amounts are discussed in turn, below.

9

10

    i.  Compensatory damages

11

Although a class has not yet been certified, Bayol has proposed a class defined as

12

"All California residents who subscribed to and/or are subscribing to Zipcar's car rental

13

services pursuant to the Membership Agreement, or any successor agreement thereto, and

14

who paid one or more Late Fees imposed by Defendant pursuant to the Membership

15

Agreement."  Compl. ¶ 27.

16

Zipcar submitted testimony that, between May 30, 2010 and May 29, 2014, Zipcar

17

collected $2,852,495 in late fees from non-corporate California Zipcar members.

18

Sophastienphong Decl. ¶¶ 3-4.[1]

19

At the hearing, Bayol conceded that, under the proposed class definition, class

20

members would only be entitled to fees collected from California residents, abandoning

21

her argument that the class would also be entitled to fees collected from non-residents

22

driving Zipcars in California.

23

Bayol argues that the statute of limitations should not be considered in evaluating

24

the amount in controversy.  As noted above, whether or not a court will apply an

25

affirmative defense at this stage turns on whether it is certain that the defense applies.

26

Here, it is not certain that the statute of limitations would apply.  At the hearing, Bayol did

27

28

[1] Zipcar collected $3,049,325 in late fees to California members, but $196,830 of that
amount was collected from corporate customers.  Sophastienphong Decl. ¶¶ 3-4.

13

not concede that the statute of limitations applies, and the Court did not hear any further argument about the merits of the defense; indeed, any such argument would be premature at this stage.  Under the legal certainty test, the possibility that class members might be able to avoid the statute of limitations is enough to preclude cutting off their recovery here.  However, in this case, apparently due to discovery disputes, there is no evidence regarding the amount of late fees that were charged to customers before May 30, 2010.

Bayol also argues that the amount of compensatory damages should include all amounts *billed* to California residents, rather than just the amounts *collected* from them.  Plaintiff's Opp'n at 9.

[REDACTED][2]

However, Bayol's Complaint requests damages for amounts "paid," not amounts "billed."  Compl. ¶¶ 6, 27.  The amount that was collected and not refunded is a better estimate of the amount paid than is the amount that was simply billed.

In her opposition and at the hearing, Bayol argues that the case of *Lara v. Trimac Transp. Servs. (W.) Inc.*, 2010 WL 3119366 (C.D. Cal. Aug. 6, 2010), supports her argument that the Court should include all of the amounts billed.  Plaintiff's Opp'n at 6-8.  In *Lara*, a removed case about trucking employees' fuel reimbursements in which the plaintiff was seeking remand, the court did not reduce the amount in controversy by reimbursements already paid, because "the Parties clearly dispute the propriety of any such offset," and "affirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum."  2010 WL 3119366, at *3.  At first blush, this language seems to support Bayol's argument.  However, the court in that case noted that it was "initially inclined to agree with Plaintiff that a reasonable estimate of the amount in controversy must necessarily take into account Plaintiff's Fuel Earnings, [but that] Plaintiff seeks to have it

_____

[2]

[REDACTED]

both ways and in the process introduces ambiguity into otherwise clear jurisdictional allegations." *Id.* at *2. Specifically, the plaintiff in that case "represented to [the court] that he will seek the full amount of Fuel Deductions, without any offset, if Defendant does not argue for any offset." *Id.* Because the plaintiff himself had put the validity of the offsets in dispute, he could not claim that they should reduce the amount in controversy for his remand motion. *Id.* at *3. Even so, the court noted that "a reasonable estimate of the amount in controversy would likely have to take cognizance of any offset readily apparent from the face of the relevant records . . . ." *Id.*

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Finally, Bayol argues that some of the refunded amounts were likely billed before the Complaint was filed, but refunded after, and any such offsets cannot be counted because they depend on events that occurred after the Complaint was filed. Plaintiff's Opp'n at 9-10. As an initial matter, Plaintiff has not actually submitted any evidence that this happened.

[REDACTED]

[REDACTED]

[REDACTED]

the amount of any refunds that occurred after the Complaint was filed is certain to be marginal when compared to the four-year period for which Zipcar provided data.

Accordingly, $2,852,495 is a reasonable estimate of the class members' compensatory damages in light of the evidence presented to the Court.

///

///

///

United States District Court
Northern District of California

ii.   Punitive damages

"Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount." *Bell v. Preferred Life Assur. Soc.*, 320 U.S. 238, 240 (1943); *Gibson*, 261 F.3d at 945.  As discussed above, the CLRA allows plaintiffs to recover punitive damages.  Cal. Civ. Code § 1780(a)(4).  As was also discussed above, Bayol plausibly seeks punitive damages in her proposed amended Complaint.  Proposed FAC ¶ 46.

Although there is no statutory limit on the amount of punitive damages that are recoverable in this case, the Supreme Court has stated that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).  A ratio of 1:1 between punitive and economic damages has been described as "conservative" for purposes of calculating the amount in controversy. *Guglielmino*, 506 F.3d 696, 698, 701.

Zipcar argues that, even if punitive damages are included, their value must be assessed only as related to a single plaintiff, and not to the class as a whole.  Def.'s Reply at 12 (Docket No. 63) (citing *Gibson*, 261 F.3d at 947).  However, *Gibson* was decided in 2001, prior to CAFA's enactment in 2005.  As noted above, CAFA changed the amount in controversy calculation by broadly allowing the aggregation of plaintiffs' claims.  "Thus, when CAFA applies, . . . the total amount of the claimed punitive damages are to be applied to the statute's $5 million jurisdictional amount requirement."  14AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3704.2 (4th ed.).

Here, Bayol's punitive damages claim easily puts the amount in controversy over $5 million.  Using a conservative 1:1 ratio for punitive to compensatory damages, and using Zipcar's estimate of late fees collected from California residents as a conservative estimate of compensatory damages, Bayol's claim for punitive damages doubles the amount in controversy, putting it above the CAFA threshold.

16

United States District Court
Northern District of California

iii.   Attorneys' fees

The amount in controversy includes attorneys' fees if they are permitted by law. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  When reviewing attorneys' fees in the class action context, the Ninth Circuit has held that the "benchmark" for a reasonable fee is 25% of the class award's common fund.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Courts in this district have relied on the benchmark amount as an estimate for the amount in controversy analysis, at least in the removal context.  *E.g.*, *Giannini v. Nw. Mut. Life Ins. Co.*, No. 12-cv-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012); *Jasso v. Money Mart Exp., Inc.*, No. 11-cv-5500 YGR, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012).

In spite of this benchmark amount, Bayol argues that an attorneys' fee estimate of 30% should be used here, because in order to show federal jurisdiction, she only needs to show a legal possibility of obtaining this amount, and this amount has been awarded in other cases.  Plaintiff's Opp'n at 15 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298 (3d. Cir. 2005)).  Plaintiff argues, correctly, that the cases in this district cited above which used the 25% amount were in the removal context, which has a more demanding standard of review than the legal certainty test that is used when a case is initially filed in federal court.

The Court does not now decide whether an attorneys' fee estimate greater than 25% may be appropriate when evaluating the amount in controversy for cases initially filed in federal court.  In this case, Bayol has alleged a sufficient amount in controversy based on the combination of compensatory and punitive damages.  Even using the benchmark estimate of 25% of the damages recovery, Bayol has placed an additional $1,426,247.50 in controversy,[3] so the amount in controversy rises to at least $7,131,237.50.

///

///

---

[3] The total damages estimate is $5,704,990, and 25% of $5,704,990 is 1,426,247.50.

iv.   Injunctive relief

Finally, the amount in controversy includes the value of injunctive relief.  *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).  Where CAFA applies, this amount can be determined from either the plaintiff class's or the defendant's "viewpoint."  *Tompkins v. Basic Research LLC*, No 08-cv-244 LHK, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008).  As discussed above, CAFA abrogated Ninth Circuit precedent, and allowed courts to aggregate the value of plaintiffs' claims.  CAFA's aggregation rule applies to the value of injunctive relief.  *Id*.  Thus, a defendant's aggregate cost of compliance with an injunction is appropriately counted toward the amount in controversy.

Here, Bayol's Complaint seeks a "permanent injunction enjoining Zipcar . . . from in any way engaging in the unfair and unlawful practices and violations of law set forth herein."  Compl. at 14.  Broadly construed, such an injunction could preclude Zipcar from collecting any late fees whatsoever.

[REDACTED]

Zipcar's cost of compliance with an injunction can therefore be estimated at $1 million annually.

At the hearing, Zipcar argued that it would cost it virtually nothing to comply with such an injunction, because it could switch off its process of billing late fees within minutes of the entry of an injunction.  The Court is not persuaded that this means that its cost of compliance would be zero.  If Zipcar stopped collecting late fees, then its income would be reduced by a corresponding amount, whereas its operating costs would remain roughly equal (not considering any secondary effects that stopping the collection of late fees would have on Zipcar members' use of the cars).  Such lost income is properly included as the cost of compliance.

It is not possible to estimate Zipcar's future cost of compliance with an as-yet-unknown injunction with any real certainty.  Nor is it necessary to do so, since a sufficient amount in controversy has already been alleged in the factors described above.  Even so,

1   the fact that [REDACTED]

2   under a possible injunction in this case is further evidence that Bayol has placed a

3   sufficient amount in controversy to exceed the CAFA threshold.

4

5         v.   Total amount in controversy

6         Adding the amounts set forth above, Bayol has put the following amounts in

7   controversy: $2,852,495 (compensatory damages); $2,852,495 (punitive damages);

8   $1,426,247.50 (attorneys' fees); and roughly $1 million per year (cost of compliance with

9   an injunction).  The total amount in controversy is therefore $7,131,237.50, with

10  approximately $1 million per year in compliance costs.  This is significantly greater than

11  CAFA's $5 million threshold.

12

**CONCLUSION**

13

14        Because of the strong presumption in favor of amendment and the absence of

15  reasons not to amend here, Bayol's motion for leave to amend the Complaint is

16  GRANTED.  **Bayol shall file her amended Complaint within two weeks of entry of this**

17  **order**.  Considering the amended Complaint, Bayol has alleged more than $7 million

18  dollars in controversy, which is well above the requirement for original jurisdiction under

19  CAFA.  Zipcar's motion to dismiss for lack of subject matter jurisdiction is therefore

20  DENIED.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

United States District Court
Northern District of California

19

Finally, the Court is concerned with the slow pace of litigation in this case. All additional motions in this case shall comply with the schedules set forth in the Civil Local Rules of the Northern District of California. Requests for extended briefing schedules will be denied absent compelling reasons.

**IT IS SO ORDERED.**

Dated:   08/17/15

_____

THELTON E. HENDERSON
United States District Judge

United States District Court
Northern District of California

20